[Woodliff, et al. v. Dunlap.]

# Woodliff, *et al. v.* Dunlap.

## *Bill to Construe Will.*

(Decided June 18, 1914.   65 South. 936.)

1. *Wills; Revocation; Marriage and Issue.*—At common law the subsequent marriage and birth of issue from such marriage of a testator, operated as an unqualified revocation of the will, unless there was a provision in the will for a future wife and child or children. The birth of issue alone, however, did not work a revocation, but such issue would be cut out of participation in any of the property.

2. *Same; Election; Right of Widow.*—Where the widow of a testator is displeased with the provisions of the husband's will, she may dissent from it and receive that interest in his property, real and personal, which she would have received had he died intestate. (Sections 6168-6171, Code 1907.)

3. *Executors and Administrators; Sale of Property; Power Under Will; Subsequent Birth of Issue; Revocation.*—Where the testator bequeathed all his property to his wife and gave her unqualified power to sell any and all of the property she might deem best, the subsequent birth of issue unprovided for in the will did not revoke the widow's power to sell as executrix, but merely imposed on her the duty to account to the after-born children for their interest in the proceeds of the property sold (section 6160, Code 1907.)

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Bill by Myrtle Kidd Dunlap, as executrix, etc., against A. W. Woodliff and her minor children for the construction of the will of her testator and husband. From a decree construing the will, respondents appeals. Affirmed.

The will is as follows:

Item 1. It is my will and desire that all my just debts be paid as soon as practicable after my death.

2. It is my will and desire that my beloved wife Myrtle Kidd Dunlap have all my property and effects at my death, and I do hereby devise and bequeath to my said

wife all my property and effects of whatever description, real, personal and mixed, hereby making her my sole devisee and legatee.

3. I hereby appoint my said wife Myrtle Kidd Dunlap my executrix of this will, and she is hereby exempted from making or giving any bond as such executrix, and is hereby authorized to wind up any and all business with or in which my estate may be interested, and sell any or all of the property as she may deem best without any order of court, and without having to account therefor.

HOOD & MURPHREE and T. R. OWENS, for appellant. Counsel discuss the provisions of § 6160, Code 1907, as affecting the rights of issue unborn, after the making of the will, but without citation of authority.

GOODHUE & BRINDLEY, for appellee. The power conferred upon the wife as the administratrix is not defeated by the fact that her interest in the property devised in the will is altered or destroyed by issue afterwards born.

DE GRAFFENRIED, J.—In July, 1900, John D. Dunlap made his last will and testament, which is copied in this record, and which the reporter will set out.

Subsequent to the execution of the will two children were born to the said John D. Dunlap and his wife, Myrtle Kidd Dunlap. After the birth of said children—and they yet live—John D. Dunlap died. His said will was thereupon regularly admitted to probate, and his said widow, Myrtle Kidd Dunlap, named in the will as the sole legatee and devisee thereof, and also as its executrix without bond, duty qualified as the executrix

of the will. In the will the said Myrtle Kidd Dunlap, as executrix thereof, is given the unqualified power to sell any or all of the property of the testator "as she may deem best."

1. Section 6160 of the Code of 1907, which was operative at the time of the execution of this will and at the time of the death of the testator, as it was brought into the Code of 1907 from the Code of 1896, provides as follows:

"Whenever a testator has a child, born after the making of his will, either in his lifetime or after his death, and no provision is made in the will in any way for such contingency, such birth operates as a revocation of the will, so far as to allow such child to take the same share of the estate of the testator as if he had died intestate."

It is conceded that under the terms of said section the two children of John D. Dunlap born after the execution of the will and for whom the will makes no provision, upon the death of their father, took that interest in his estate which they would have taken if there had been no will. In other words, it is conceded that by inheritance they took, immediately upon the death of their father, that interest in his estate which they would have taken if he had died intestate, and that, upon a final settlement of his estate, they are entitled, under our statute of distributions, to have distributed to them that part of his personal estate to which they would have been entitled had he died intestate.

2. The only question about which the parties are in doubt is the question as to whether the birth of the children *after* the execution of the will had the effect to destroy or in any way limit the unqualified power of disposition which, in his will, the testator lodged in the hands of his executrix.

3. At common law the subsequent marriage and the birth of issue of a testator operated as an unqualified *revocation* of his will in toto. The birth of issue *alone* had no effect upon the will, and such issue was cut out of participating in any property devised by such will. At common law, however, it was well settled that if *provision* was made in the will for a *future wife* and *child* or *children,* in the event of a subsequent marriage and birth of issue, then such will was *not* impliedly revoked by a subsequent marriage and birth of issue.

"Upon whatever grounds this rule of revocation may be supposed to stand, it is on all hands allowed to apply (and upon this subject particularly after what was said by Lord Mansfield in *Brady v. Cubit,* Dougl. 39) only in cases where the wife and children, the *new objects of bounty,* are *wholly* unprovided for, and where there is an entire disposition of the whole estate to their exclusion and prejudice. This, however, cannot be said to be the case where the same persons who, *after* the making of the will, stand in the relation of wife and children, were specifically contemplated and provided for by the testator, though under a different character and denomination."—*Kenebit v. Schafton and others,* 2 East's Rep. 530; *Halloway v. Clarke,* 1 Phillemon's Rep. 339.

4. Under the statutory system prevailing in this state, the *law,* regardless of the last will and testament of the husband, makes provision for the widow out of the property which the husband leaves behind him. She has her rights of homestead, of dower, and is provided for in our statutes of distribution. If she is displeased with the provisions of her husband's will, she may *dissent* from it and receive that interest in his property, real and personal, which, under our statutes, she would have received had there been no will.—Code 1907, §§ 6168-6171.

5. As, however, a testator may lawfully cut out his children from their inheritance, and as the law cannot presume that a testator, in the absence of a declaration in the will to the contrary, has any reason for cutting from its inheritance a child not in existence at the time of the making of a will, and as wills are ambulatory and subject to change at any time by their makers, it was not inappropriate that our Legislature should make the provision which is set forth in the above-quoted section 6160 of the Code of 1907.

While the subjects of descent and distribution are of statutory control, they are, and have always in this state, been dealt with by our state Legislatures on the basis of equality among blood relations, and in cases of intestacy those natural claims which arise from equal blood relationship have, at all times, been fully recognized and enforced by our statutory system. All sane persons of lawful age may make wills, but the majority of men do not do so, because they are satisfied with the justice and the equality which have been established by out statutes of distributions. The only reason which could have actuated the Legislature in enacting the statute was the protection of those not in existence when a will is made, but who, upon coming into existence, are the natural objects of the testator's *equal* bounty, and who, the Legislature, in the absence of a declaration in the will to the contrary or of a republication of the will after the happening of the event, had a right to presume, would have been, by a codicil or by an entirely new will, provided for by the testator, but for the peculiar opinion which seems to attend nearly all human beings, viz.: That there is always, in the *future, ample* time within which to make or to alter a will.

The true reason at common law for the implied revocation of a will where there was a subsequent marriage

and birth of issue of the testator *not provided for by the testator* was that the testator executed the will with "a tacit condition annexed to the will when made that it should not take effect if there should be a total change in the situation of the testator's family."—*Doe v. Lancashire*, 5 Term. Rep. 58.

Our statutory system arms the widow, as we have already stated, with the power of setting at naught, in so far as her rights are concerned, every provision of a will, and the above section 6160 of the Code provides for children born after the execution of a will for whom the will fails to make provision. A will executed and operative upon property in this state, and which makes no provision for the changed relations of the testator growing out of a subsequent marriage and birth of issue, cannot now be truthfully said to be made with the "tacit condition annexed to the will when made that it should not take effect if there should be a total change in the situation of the testator's family." Our statutes themselves make the needed provisions and furnish the protection which, but for the statutes, would not exist. The mischief which section 6160 of the Code was intended to remedy is therefore plain. When the legislative purpose in enacting a statute is plain, then the statute should be construed to meet the legislative purpose, and *only that purpose*. The *mere* letter of a statute should not extend the operation of a statute beyond the plain purpose of the Legislature in passing the statute. While the words "revocation" and "intestate" appear in the above-quoted section 6160, the statute meant simply to secure to a child born after the execution of a will, and who is not provided for in the will, a child's share in the real and personal property of the estate of the testator, unless the testator, in his will, shows that he intended that such child should not

[Woodliff, et al. v. Dunlap.]

participate in his estate. The statute was not intended to operate upon a clause in a will appointing an executor or upon a clause conferring upon an executor, in the execution of his trust, the power to sell the property of the testator. To hold otherwise would be to set at naught the history of the subject now under consideration and the reasons which underlie the statute itself.—*Shackelford, et al. v. Washburn, et al.,* 180 Ala. 168, 60 South. 318, 43 L. R. A. (N. S.) 1195.

6. In the third clause of the will the testator vests Mrs. Myrtle Kidd Dunlap with an absolute power of sale over his property. This power is plainly given to her as executrix, for, in the second clause of his will, he devised to her absolutely all of his property. The third clause, however, declares that his said executrix shall not be required "to account therefor," meaning that she shall not be required to account for the proceeds of the sale of any of the testator's property. In our opinion, Mrs. Myrtle Kidd Dunlap, as executrix, under the terms of her husband's will, has the power to sell his property without an order of court. Under the law, however, as there are children born to the testator after the execution of the will, for whom no provision is made in the will, she must account for the proceeds of the sale of any property which she may make as executrix. As there are after-born children not provided for in the will, and as the will does not show that the testator did not intend for such after-born children to participate in his estate, section 6160 of the Code of 1907, in connection with which this will must be construed, requires that the executrix shall account to such children in the way in which she would have been required to account to them if her husband had died intestate. In other words, taking into consideration the history of the law on this particular subject to which our attention is ad-

dressed, and the reasons which actuated the Legislature in enacting what is now section 6160 of the Code (see *Shackelford, et al. v. Washburn, et al., supra*), we are of the opinion that said section has had no effect upon the power of sale which, in the third paragraph of the will, is conferred upon the executrix, but that it has abrogated and annulled, on account of the birth of issue to the testator subsequent to the execution of the will and for whom no provision is made in the will, so much of said paragraph 3 as exempts the executrix from accountability to such after-born children.

The decree of the court below is in accord with the above views, and it is therefore affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.